**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

ROMAN FINNEGAN, *et al.*,            )
                                     )
Plaintiffs,                          )
                                     )
vs.                                  )   NO. 3:08-CV-503
                                     )
LAUREL MYERS, *et al.*,              )
                                     )
Defendants.                          )

## OPINION AND ORDER

This matter is before the Court on the Defendant John F. Cavanaugh's Motion for Judgment on the Pleadings, filed by Defendant, John F. Cavanaugh, on September 7, 2012 (DE #122). For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

The facts of this case are many, but it is not necessary for the Court to completely delve into the extensive record at this time. Simply put, Plaintiffs have sued multiple defendants, including the instant Defendant, Dr. John Cavanaugh, a forensic pathologist. Plaintiffs allege in this Section 1983 action that defendants repeatedly and wrongfully claimed that Roman and Lynnette Finnegan medically neglected or murdered Lynnette's 14-year old daughter, Jessica Salyer, despite the eventual conclusion

that she died on December 20, 2005, from a major prescription error combined with congenital heart disease (post-Fontan) and a seizure disorder.

Defendant Dr. Cavanaugh filed the instant motion for judgment on the pleadings on September 7, 2012, claiming that the suit is not proper against him for two reasons. First, he argues he is immune from civil liability under Indiana Code § 36-2-14-13. Second, Dr. Cavanaugh contends he has qualified immunity for claims brought under 42 U.S.C. § 1983.

Plaintiffs filed their response on September 24, 2012 (DE #127). They contend that Dr. Cavanaugh cannot rely upon state law to immunize his deliberate, wrongful conduct under Section 1983. They also argue that he is not entitled to qualified immunity for withholding critical information from the Coroner, intentionally omitting critical information from his autopsy report, and lying to the Plaintiffs. Defendant filed a reply on October 5, 2012 (DE #131). Consequently, this motion is fully briefed and ripe for adjudication.

DISCUSSION

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is reviewed under the same standard as a motion to dismiss under 12(b) . . . ." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *see also R.J. Corman Derailment*

*Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). Where the plaintiff moves for judgment on the pleadings, "the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004)(quotation omitted). In other words, "[a] court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718-19 (7th Cir. 2002). In ruling on a motion for judgment on the pleadings, the court must accept as true "all well-pleaded allegations" and view them in the light most favorable to the non-moving party, as well as accept as true all reasonable inferences to be drawn from the allegations. *R.J. Corman*, 335 F.3d at 647; *see also Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452-53 (7th Cir. 1998); *see also* Fed. R. Civ. P. 10(c)(providing that written instruments attached as exhibits to a pleading are part of the pleading for all

3

purposes).

Facts

Jessica was diagnosed prenatally with tricuspid atresia and had two open heart surgeries by age six, leaving her with half a heart. (First Amended Complaint "FAC" ¶ 18.) She also had a fourth generation seizure disorder. (*Id.* ¶ 19.) Jessica took three medications: warfarin (brand name Coumadin), a high-risk anticoagulant needed to prevent clotting; digoxin to control her heart beat, and phenytoin (brand name Dilantin) for her seizure disorder. (*Id.* ¶ 20.)

When Jessica died, the Coroner retained Dr. Cavanaugh, a forensic pathologist, to perform an autopsy to help him with his Inquest. (*Id.* ¶¶ 167, 169.) At the December 21, 2005 autopsy, Dr. Cavanaugh found no signs of abuse or neglect but identified numerous small hemorrhages throughout Jessica's body. (*Id.* ¶¶ 51, 55.) In his handwritten preliminary report[1], he concluded that Jessica's death was caused by a subdural hemorrhage due to blunt force trauma consistent with a fall exacerbated by Coumadin

---

[1] The Court notes that Dr. Cavanaugh prepared three postmortem reports: (1) a preliminary handwritten report dated December 21, 2005, the day of the autopsy, which he provided to the Coroner; (2) a formal report dated May 24, 2006, which noted a fracture that had not been noted during the autopsy or in the preliminary report; and (3) a second formal report dated July 8, 2007, following the January 25, 2007 exhumation and second autopsy.

4

(warfarin). (*Id.* ¶ 55.) This is a standard description of a warfarin death caused by a minor fall. (*Id.* ¶ 105.)

In his May 24, 2006 report, Dr. Cavanaugh identified a skull fracture that he had not mentioned at the autopsy or in his preliminary report. (*Id.* ¶ 55.) He did not provide a review of the microscopic slides at that time. Dr. Cavanaugh's other conclusions remained unchanged.

Plaintiffs allege that based on the reported fracture, the Department of Child Services ("DCS") Defendants believed Jessica's death was a homicide and enlisted the help of Defendant Antoinette Laskey, a pediatrician, who then issued an opinion finding that Jessica died from a fatal beating on the day of death (a claim that Plaintiffs allege was physiologically impossible given the lack of bruising). (*Id.* ¶¶ 57-63.) The first amended complaint also alleges that in reaching her conclusion that "Jessica died from a fatal beating on the day of death, causing internal hemorrhages and skull fracture . . . Dr. Laskey did not consult with the Coroner or any of the other investigators." (*Id.* ¶ 58.)

The first amended complaint alleges that the opinion letter by Dr. Laskey resulted in DCS seizing Jessica's siblings, Tabitha and Katelynn. (*Id.* ¶ 64.) It also that alleges that within weeks, the Finnegans' counsel discovered that Jessica's doctor had increased her warfarin prescription from 3-7 mg, and eliminated her seizure medication, placing Jessica in imminent danger of internal bleeding

5

and seizures. (*Id.* ¶¶ 69-72, 173.) The prescription errors ultimately explained the medical findings and death, and contradicted Dr. Laskey's report. *Id.*

A January 25, 2007 exhumation and second autopsy established that Dr. Cavanaugh had created the skull fracture during the first autopsy. (*Id.* ¶¶ 73-74, 183.) On April 17, 2007, Dr. Cavanaugh gave Detective McDonald two sets of autopsy slides, one for the ISP and one for the Finnegans. (*Id.* ¶ 217.) However, defendant McDonald refused to give the Finnegans their set of slides, which established that the subdural hemorrhage was weeks to months old, consistent with the prescription errors. *Id.* By July 2, 2007, the Coroner had not yet received Dr. Cavanaugh's review of the slides, and he asked Dr. Cavanaugh, Dr. Laskey, the DCS Defendants, and the Finnegans' counsel to provide any new information to him by July 9, 2007, so he could issue a Verdict. (*Id.* ¶ 235.)

Plaintiffs' claim against Dr. Cavanaugh is:

> [B]ased on a newly discovered email that shows he deliberately and in bad faith omitted critical exculpatory information from his July 8, 2007 autopsy report and concealed it from the Coroner, who had retained him. This information included a review of the autopsy slides, which confirmed that the bleeds were ongoing for at least 5-10 days and possibly weeks, consistent with the defense expert reports and the prescription errors. . . The failure to disclose this exculpatory information to the Coroner and participation in a conspiracy with Ms. Pherson and defendant McAninch to conceal it from the Coroner, the courts and the Finnegans eliminates any immunity to which Dr. Cavanaugh might otherwise be entitled.

6

(*Id.* ¶ 169.)

In the meantime, the Finnegans' counsel had received information from the prosecutor and forwarded it to other doctors, Dr. Pless and Dr. Leestma, who opined that the hemorrhage was old, and the fracture was postmortem. (*Id.* ¶¶ 96, 105, 106, 239.) Plaintiffs' counsel offered to provide materials to Dr. Cavanaugh and meet with him to discuss, however, on July 8, 2007, Dr. Cavanaugh told counsel his copies of the slides "do not show any chronic changes beyond a day or so" and Dr. Cavanaugh declined to review Dr. Leestma's and Dr. Pless's reports or meet with the Finnegans' counsel, saying he would "just go with the evidence he [had]." (*Id.* ¶¶ 239, 240; Ex. 2-E.) Dr. Cavanaugh's July 8, 2007 autopsy report did not contain any information on the autopsy slides. (*Id.* ¶ 241.)

Three days after he issued his second formal autopsy report, Dr. Cavanaugh wrote an e-mail (right before his scheduled deposition), which is largely the basis for the Plaintiffs' claims against him. The July 11, 2007 e-mail written from Dr. Cavanaugh to Sheryl Pherson, attorney for Pulaski County DCSA, is as follows:

> Thought I'd give you a heads-up on the final report. Although I didn't go into detail in the report, there has been some significant new information that changes certain opinion details: . . . 2. There is both new and old bleeding in the skull - certain portions of the clot examined microscopically after the 2nd autopsy (more specimens submitted) look to be in the 5-10 day range or older. This means more than one bleeding episode, with possibly 2 weeks of noticeable

7

> neurologic symptoms and/or pathologic bleeding. The scalp contusions also appear to be of two different ages. 3. Portions of the skull fracture are indeed autopsy artifact. . . .

(DE #91-1.)

Neither Ms. Pherson nor Dr. Cavanaugh disclosed this "significant new information" to the Coroner, the Court, or the Finnegans. (FAC ¶ 246.) Rather, after receiving the e-mail, Ms. Pherson cancelled Dr. Cavanaugh's deposition and moved to postpone the fact finding. *Id.* Plaintiffs allege the false claims against the Finnegans continued for nearly three more years in public forums, with the Defendants rejecting the Coroner's Verdict. Plaintiffs allege that Dr. Cavanaugh deliberately and in bad faith concealed and omitted exculpatory information, including his review of the autopsy slides, from his autopsy report and violated the family's constitutional rights. (*Id.* ¶ 302.)

Civil Immunity Under Indiana Code § 36-2-14-13

Dr. Cavanaugh first moves for judgment on the pleadings arguing that he has civil immunity under Indiana Code § 36-2-14-13. That section provides that "[a] person who in good faith orders or performs a medical examination or autopsy under statutory authority is immune from civil liability for damages for ordering or performing the examination or autopsy." Ind. Code § 36-2-14-13. However, "[c]onduct by persons acting under color of state law

which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law." *Hampton v. City of Chicago, Cook County, Ill.*, 484 F.2d 602, 607 (7th Cir. 1973). In *Hampton*, the Court explained that "[a] construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." *Id.* (citing *McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968)). Therefore, dismissal is not proper under section 36-2-14-13.

Even assuming, *arguendo,* that it was applicable, section 36-2-14-13 still does not render Dr. Cavanaugh immune. While the section provides immunity for a person who performs a medical examination or autopsy in good faith, in this case, Plaintiffs have pled that Dr. Cavanaugh acted deliberately and in bad faith (not merely negligently), and with a dishonest purpose. (FAC ¶¶ 169, 302.) By allegedly concealing important information from the Coroner and Plaintiffs, Plaintiffs have pled enough detail for a fact finder to conclude that Dr. Cavanaugh acted in bad faith, willfully ignored his statutory duties, and did this knowing it would result in the continued deprivation of the Plaintiffs' constitutional rights.

<u>Qualified Immunity</u>

9

In the instant motion for judgment on the pleadings, Dr. Cavanaugh argues he is: (1) entitled to qualified immunity because he was "the pathologist retained by the Jasper County Coroner" and "acted appropriately at all times"; and (2) Plaintiffs have not sufficiently alleged that he conspired to violate Plaintiffs' constitutional rights. (DE #123, p. 12.)

Dr. Cavanaugh was retained by the Coroner to perform an autopsy and to report his findings to the Coroner. *See* I.C. § 36-2-14-6(a), (d); FAC ¶¶ 167, 169. Dr. Cavanaugh sets forth that "coroners enjoy the same qualified immunity as police officers or other investigators for the state prosecutor." *Kompare v. Stein*, 801 F.2d 883, 888 (7th Cir. 1986) (citation omitted). However, this qualified immunity does not extend to withholding material exculpatory evidence. *See Fields v. Wharrie*, 672 F.3d 505, 513 (7th Cir. 2012) (stating state actors, like police, "share the prosecutor's constitutional obligation to disclose exculpatory evidence to the defendant.").

Dr. Cavanaugh claims that he acted appropriately at all times. He points to Plaintiffs' own allegations in the complaint, including but not limited to:

> On November 2 [2006], Dr. Cavanaugh confirmed, in writing, that the bleeding that Dr. Laskey attributed to a fatal beating on the day of death, had in fact started earlier, possibly with slow intractable bleeding, and was exacerbated by Coumadin. (FAC ¶ 171.)

> On April 17, [2007] Dr. Cavanaugh gave Det.

> McDonald two sets of autopsy slides, one for the ISP and one for the Finnegans. However, defendant McDonald refused to give the Finnegans their set of slides, which established that the subdural hemorrhage was weeks to months old, consistent with the prescription errors. (FAC ¶ 217.)

However, as noted by Plaintiffs, Dr. Cavanaugh did not provide this exculpatory information to the Coroner or the Finnegans, he only revealed it to DCS and McDonald. For example, with regards to the written confirmation in November 2006 that the bleeding had started earlier, Plaintiffs argue Dr. Cavanaugh did not provide this information to the Coroner, but rather McAnich, who also withheld it from the Coroner. (DE #127, pp. 16-17.) DCS was later held in contempt for McAninch's and Myers' failure to provide information to the Coroner in response to the Coroner's administrative and judicial subpoenas. (*Id.*, p. 17.) With regard to the autopsy slides, Plaintiffs argue Dr. Cavanaugh knew the subdural hemorrhage was weeks to months old, consistent with prescription errors, but he concealed that information from the Coroner. (*Id.*, p. 17.) Dr. Cavanaugh revealed the information to DCS in July 2007, but never disclosed it to the Coroner. (*Id.*)

While it is true the July 11, 2007 e-mail sent to Sheryl Pherson, Attorney for Pulaski County DCS, tells DCS that the subdural hemorrhage was old, and he had not gone into detail on this point in his report given to the Coroner, Plaintiffs correctly point out that the problem is that Dr. Cavanaugh entirely omitted any review of autopsy slides from his second autopsy report. (DE

11

#127, p. 18.) This was despite the Coroner waiting for him to provide the findings. (FAC ¶ 235.) Plus, after Dr. Cavanaugh informed DCS of his findings, he still did not provide this information to the Coroner. (*Id.* ¶ 246.) Defendants argue:

> [H]ad Cavanaugh provided a slide review to the Coroner in November 2006, when he learned that Laskey and DCS were calling this a homicide, the girls would have been quickly returned and the parents would never have been arrested. Instead, the children were held for nine months of interrogation and the parents arrested based on theories advanced by the DCS Defendants and Defendant McDonald that Cavanaugh knew to be wrong.

(DE #127, p. 19.)

Although Dr. Cavanaugh tries to argue that the amended complaint merely alleges negligence on his part, this is incorrect. The complaint clearly alleges that Dr. Cavanaugh considered the slides (which support the Finnegans, and disproved the theories of Dr. Laskey and DCS), but intentionally omitted this information from his autopsy report. (FAC ¶¶ 169, 245-46.) Indeed, Dr. Cavanaugh's July 11, 2007 e-mail could be interpreted to support such allegations.

The cases cited by Dr. Cavanaugh involving forensic pathologists all involve negligence, not accusations of intentional wrongdoing or concealing evidence, and they are therefore inapposite. For example, in *Lawyer v. Kernodle*, 721 F.2d 632, 633 (8th Cir. 1983), the complaint was based on negligent diagnosis of cause of death and the pathologist's erroneous and premature

12

communications of conclusions of cause of death. Unlike here, in *Lawyer*, the plaintiff did not allege that the defendants "acted outside the permissible scope of their statutory discretion." *Id.* at 635.

*In Kompare v. Stein*, 801 F.2d 883, 885-86 (7th Cir. 1986), the Seventh Circuit found a county coroner was entitled to qualified immunity from a claim she failed to conduct a thorough autopsy in violation of a county ordinance. The Court did say that, "[i]n complaining that the defendant violated the Ordinance, the plaintiffs are essentially arguing that the defendant failed to investigate thoroughly [the] death and failed to reveal exculpatory information." *Id.* at 888-89. However, the main issue in that case was whether the violation of a municipal ordinance is a *per se* violation of due process and thus gives rise to a cause of action under § 1983. There was no allegation in that case that the coroner intentionally conducted an autopsy in bad faith or she intentionally withheld exculpatory evidence. Rather, in *Kompare*, the coroner did not look at slides until after the postmortem examination report, and then right before the trial, the coroner updated the report to include the review of slides (which the coroner testified at trial did not change her diagnosis of the death). *Id.* at 885-86. Here, the Plaintiffs are not claiming that Dr. Cavanaugh conducted a negligent autopsy or reached premature conclusions - they claim he deliberately omitted important autopsy

13

findings from his report and concealed them from the Coroner, which enormously prejudiced Plaintiffs. Moreover, in this case, this Court has already found that Plaintiffs sufficiently alleged a violation of Plaintiffs' 14th amendment substantive and procedural due process rights based on the seizure of their children. (DE #61, pp. 24-25; *see also* DE #53-1, Blankenship Opinion and Order, pp. 69-72 (highlighting the substantive and procedural problems).)

At this stage of the proceedings, when the Court must accept as true all well-pleaded allegations and view them in the light most favorable to the non-moving party, as well as accept as true all reasonable inferences to be drawn from the allegations, the Court cannot say beyond a doubt that Plaintiffs cannot prove any facts to support a claim for relief. *Brunt*, 284 F.3d at 718-19; *R.J. Corman*, 335 F.3d at 647. Facts have been alleged that would sufficiently let a fact finder determine that Dr. Cavanaugh was responsible for reviewing the microscopic slides, that he deliberately concealed his review from the Coroner and was not truthful to the Finnegans' counsel about his findings, and that he did this knowing that the information could impact the investigation, detention of the Finnegans' children, and arrest of the Finnegans. This is sufficient. *See, e.g., Martin v. Kim*, No. 2:03 CV 536, 2005 WL 2293797, at *8 (N.D. Ind. Sept. 19, 2005) (denying motion to dismiss on ground of qualified immunity as premature); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)

14

(quotation omitted) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plea factual allegations that anticipate and overcome a defense of qualified immunity."). Dr. Cavanaugh's argument that he could not have done any wrongful conduct since Plaintiffs concede that Dr. Cavanaugh never himself claimed Jessica had been murdered or abused (DE #127 n. 15), does not necessarily mean that Plaintiffs cannot prove that Dr. Cavanaugh acted in bad faith, willfully refused to turn over exculpatory material, and did so knowing it could result in the deprivation of Plaintiffs' constitutional rights.

Moreover, dismissal of the conspiracy claim is not appropriate either. Plaintiffs have alleged that:

> Defendant Cavanaugh participated in the conspiracy by the DCS defendants, Det. McDonald and Dr. Laskey to make and maintain false claims against Roman and Lynnette Finnegan and to prevent accurate information from reaching the Coroner and the courts. Like the other defendants, Dr. Cavanaugh provided false information and concealed critical exculpatory information in order to create and maintain a case against the Finnegans, in bad faith and without rational belief or probable cause.

(FAC ¶ 305.) At this stage, this is sufficient. *See, e.g., Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000) (plaintiffs' conspiracy allegations under § 1983 were sufficient, and no more was required at that stage of the proceedings, because they "alleged all of the necessary facts: the who, what, when, why, and how. No more is required at this stage."). Dr. Cavanaugh cites

15

*Kunik v. Racine Company*, 946 F.2d 1574, 1580 (7th Cir. 1991), for the proposition that it is not enough to allege vague facts or include no overt acts reasonably related to the alleged conspiracy. But *Kunik* was overruled by the Seventh Circuit in *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002), which held that *Kunik* "cannot be squared with" the Supreme Court's 2002 decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), and that "it is enough in pleading a conspiracy to indicate the parties, general purpose, and approximate date." *Id.* at 1007-08. Although *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), have subsequently imposed a plausibility standard on all pleadings, Plaintiffs have met those by alleging sufficient facts in the First Amended Complaint, and pointing to the July 11, 2007 e-mail, which sufficiently alleges the conspiracy between Dr. Cavanaugh and the DCS Defendants.

In his reply brief, Dr. Cavanaugh argues for the first time that the claims against him are barred by the statute of limitations. (DE #131, pp. 3-5.) Because Dr. Cavanaugh did not raise this contention until his reply brief, this argument is waived. *See United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006) (holding arguments not fully developed until a reply brief are waived). Moreover, even if this Court were to consider the statute of limitations argument, it would still fail because Plaintiffs did not discover the July 11, 2007 e-mail until the

second round of discovery conducted in October 2011. (DE #127, p. 4, n.5.)

Dr. Cavanaugh also argues for the first time in the reply brief that he is not a proper defendant because Plaintiffs failed to establish he was acting under color of state law. Again, this argument is waived. *See Alhalabi*, 443 F.3d at 611. Even if it was timely raised, it would still fail. Plaintiffs alleged Dr. Cavanaugh was the forensic pathologist who conducted Jessica's autopsy and that "he deliberately and in bad faith omitted critical information from his July 8, 2007 autopsy report and concealed it from the Coroner, **who had retained him**."[2] (FAC ¶¶ 167, 169 (emphasis added).) Because Plaintiffs allege he was retained by the Jasper County Coroner, that is sufficient to allege Dr. Cavanaugh was acting under color of state law.

CONCLUSION

For the aforementioned reasons, the Motion for Judgment on the Pleadings, filed by Defendant, John F. Cavanaugh, is **DENIED**.

**DATED: January 30, 2013**                  /s/ RUDY LOZANO, Judge
                                              **United States District Court**

---

[2] Indeed. Dr. Cavanaugh admits in his opening brief "[i]t is undisputed that Dr. Cavanaugh was retained by the Jasper County Coroner, Dr. Klockow. Such retention was made pursuant to Indiana Code § 36-2-14-6(d), which provides that a coroner shall employ a pathologist to perform an autopsy." (DE #123, p. 7.)

17